IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>SCOTT PATRICK HEDDINGS,<br><br>Defendant/Movant. | Cause No. CR 06-76-GF-DWM<br>CV 16-14-GF-DWM<br><br>ORDER DENYING § 2255 MOTION<br>AND DENYING CERTIFICATE OF<br>APPEALABILITY |

This case comes before the Court on Defendant/Movant Heddings' motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Heddings is a federal prisoner proceeding pro se.

This is Heddings' second motion under 28 U.S.C. § 2255. He previously filed a § 2255 motion, obtained relief on one claim, and was re-sentenced. The instant motion, therefore, is not second or successive, *see Magwood v. Patterson*, 561 U.S. 320, 342 (2010), and it is timely under 28 U.S.C. § 2255(f)(1).

## I. Preliminary Review

The motion is subject to preliminary review before the United States is required to respond. The question here is whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings

for the United States District Courts.

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But "it is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

On July 24, 2006, Heddings was indicted on one count of receipt of child pornography, a violation of 18 U.S.C. § 2252A(a)(2) (Count 1); one count of possession of child pornography, a violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 2); one count of destroying property to prevent its seizure, a violation of 18 U.S.C. § 2232(a) (Count 3); and a forfeiture count (Count 4). Indictment (Doc. 1) at 1-3. Heddings was writted out of state custody on February 27, 2007. Order (Doc. 4); Warrant Return (Doc. 10). Bryan Norcross was appointed to represent him. Minutes (Doc. 5); Order (Doc. 7).

Following a hearing on a motion to suppress, which was denied, Minutes (Doc. 33), Heddings filed a motion to change his plea to guilty. On May 1, 2007,

in open court, he pled guilty to all three counts of the Indictment. Minutes (Doc. 38).

A presentence report was prepared. Based on a total offense level of 37 and a criminal history category of I, Heddings' advisory guideline sentencing range was 210-262 months. The statutory maximum sentence on Counts 1 and 2 was 20 years, *see* 18 U.S.C. § 2252A(a)(2), (b)(1), and on Count 3, five years, *id.* § 2232(a).

On September 6, 2007, Heddings was sentenced to serve 240 months on Count 1, 120 months on Count 2, and 60 months on Count 3, all terms to run concurrently, to be followed by a life term of supervised release. Minutes (Doc. 52); Judgment (Doc. 57) at 2-3.

Heddings also faced charges in state courts in Montana and Missouri. On October 23, 2007, about six weeks after his federal sentence was imposed, Heddings pled guilty to incest in Montana's Eighth Judicial District Court, Cascade County. He was sentenced to serve 20 years in the custody of the Department of Corrections, with 16 of those years suspended. *See* 2014 Presentence Report ¶ 41. In June and October of 2008, he entered guilty pleas to charges involving sexual conduct with juveniles in two counties in Missouri. *See* 2014 Presentence Report ¶¶ 42-43.

Meanwhile, Heddings appealed his federal sentence. In light of *United*

3

*States v. Davenport*, 519 F.3d 940, 947-48 (9th Cir. 2008), his case was remanded for dismissal of either Count 1 or Count 2. *See* Mem. at 1-2, *United States v. Heddings*, No. 07-30357 (9th Cir. Dec. 15, 2008) (unpublished mem. disp.) (Doc. 70).

On January 21, 2009, Count 2 of the Indictment was dismissed without prejudice to refiling if Heddings' conviction on Count 1 should be vacated in future, and an Amended Judgment was entered. Order (Doc. 75); Am. Judgment (Doc. 77) at 1-2. On February 11, 2009, following a hearing, Heddings' motions for reconsideration and resentencing were denied. Minutes (Doc. 93); Order (Doc. 94).

Heddings again appealed, but on February 8, 2010, he voluntarily dismissed the appeal. Order at 1, *United States v. Heddings*, No. 09-30058 (9th Cir. Feb. 10, 2010).

On January 21, 2011, Heddings filed his first motion under 28 U.S.C. § 2255. Counsel was appointed to represent him. On August 15, 2013, all claims against his conviction were denied. The Court granted his claim that counsel was ineffective for failing to advocate for application of U.S.S.G. § 5G1.3. His other sentencing claims were denied as moot. Order (Doc. 171) at 20 ¶ 1.

A new presentence report was prepared. As a result of his three sentencing hearings in state court after his original federal sentencing, however, rather than 0

criminal history points and a criminal history category of I, Heddings had 9

criminal history points and a criminal history category of IV. *See* 2014

Presentence Report ¶¶ 41-43. From the original 210 to 262 months, the new

guideline range increased to 292 to 365 months. The statutory maximum sentences

remained unchanged.

On January 8, 2014, Heddings was resentenced to serve 222 months on

Count 1 of the Indictment, plus a consecutive term of 18 months on Count 3, to be

followed by a life term of supervised release. Minutes (Doc. 182); Judgment (Doc.

183) at 2-3.

Heddings appealed. On March 17, 2015, the Court of Appeals affirmed the

sentence. Mem. at 1-2, *United States v. Heddings*, No. 14-30002 (9th Cir. Mar. 17,

2015) (unpublished mem. disp.) (Doc. 191). A petition for rehearing and rehearing

en banc was denied. On January 11, 2016, the United States Supreme Court

denied Heddings' petition for writ of *certiorari*. Clerk Letter (Doc. 195).

Heddings timely filed this § 2255 motion on February 29, 2016.

On June 8, 2016, Heddings was advised that, except for Claim 6, which

alleges ineffective assistance of counsel, all of claims were procedurally defaulted.

He was given an opportunity to excuse his defaults. He responded on June 20,

2016.

In addition, on July 26, 2016, Heddings moved to amend his § 2255 motion

to add another claim. He also moved for the appointment of counsel. *See* Mots. (Docs. 202, 203).

### III. Claims and Analysis

Many of Heddings' claims are phrased as if he were raising them on direct appeal. His memorandum alleges, as Claim 6, ineffective assistance of counsel both in the underlying criminal proceedings and on appeal. In his response to the Court's Order of June 8, 2016, Heddings rgues that ineffective assistance of counsel excuses his default of his claims. The Court will consider his claims for relief together with the means he proffers to excuse his default of all claims except Claim 6.

Claims of ineffective assistance of counsel, whether at trial or on appeal, are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). At this stage of the proceedings, Heddings must allege facts sufficient to support an inference (1) that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

Heddings' claims are reorganized here, but all are addressed.

## A. Judge Haddon's Recusal

Heddings claims Judge Haddon should have recused himself because he attended the same church as Heddings and knew some of the persons who submitted sentencing letters for Heddings. Heddings also claims that counsel were ineffective in failing to seek Judge Haddon's recusal. *See* Mot. § 2255 (Doc. 196) at 7-8, 14; Mem. (Doc. 198) at 7; Resp. to Order (Doc. 201) at 4-5.

Because this claim is based on facts not in the record, Heddings could not have raised it in any of his direct appeals. In the motion he originally filed and amended *pro se* under 28 U.S.C. § 2255, however, Heddings raised claims regarding both Judge Haddon's duty to recuse himself and trial and appellate counsel's ineffective assistance in failing to seek recusal. *See, e.g.*, Mot. § 2255 (Doc. 113) at 4 ¶ 12A; Mem. (Doc. 114) at 1-3, 37, 45-46; Supp. (Doc. 119-1) at 1-3. On January 31, 2011, Judge Haddon recused himself from the § 2255 proceedings. The case was reassigned to then-Chief Judge Cebull.

On March 9, 2011, Judge Cebull issued an order finding that the recusal issue in particular would require investigation, discovery, and/or an evidentiary hearing. Judge Cebull also found that Heddings was financially qualified for the appointment of counsel, that "counsel could greatly assist the Court and Heddings by focusing on the potentially meritorious claims," and that the interests of justice weighed in favor of appointing counsel. *See* Order (Doc. 121) at 1-2. As

7

Heddings had not requested counsel, he was given an opportunity either to state that he wished to have new counsel appointed to represent him or that he intended to represent himself. Heddings was also advised that he would not be permitted to file documents *pro se* if counsel were appointed. *Id.* at 2-3.

On March 17, 2011, Heddings responded by requesting the appointment of counsel. Resp. to Order (Doc. 122) at 1. Counsel was duly appointed, and a deadline was set for filing of a second amended § 2255 motion.

When counsel filed the second amended motion, he omitted the recusal and affiliated ineffective assistance claims. *See* Second Am. Mot. (Doc. 131), *passim*. Counsel also notified the Court that Heddings might want to proceed on "certain claims other than those set forth" in counsel's pleading:

> In his prior *pro se* motion, Heddings advanced a number of claims that Counsel has abandoned in the Second Amended § 2255 motion. Counsel believes, based upon conversations with his client, that Heddings may take issue with respect to the decision to abandon certain claims. Accordingly, before proceeding further in this matter, Counsel requests the Court to give Heddings the opportunity to decide if he wishes to preserve certain claims other than those set forth in this Second § 22[]55 Motion and proceed *pro se* with respect to those claims, or whether he wishes to be represented by undersigned Counsel.

Second Am. § 2255 Mot. (Doc. 131) at 5.

On August 29, 2011, in response to counsel's notice, the Court issued an order requiring Heddings to choose between proceeding with appointed counsel and litigating his claims *pro se*. The Court also explained the dangers and

8

disadvantages of self-representation and required Heddings to complete a form and return it to the Court. *See* Order re: Appointed Counsel (Doc. 132) at 2-5. The Court concluded:

> Heddings may proceed on the Second Amended Motion with counsel. Or he may proceed pro se with all the claims in his Amended § 2255 Motion as filed on January 21 and February 10, 2011, and appointed counsel will be excused from representation, period.

*Id.* at 5.

Heddings elected to proceed on the Second Amended § 2255 Motion[1] with appointed counsel representing him. *See* Heddings' Decision re: Appointed Counsel (Doc. 133) at 1. Heddings did not appeal any ruling made in the § 2255 proceedings.

Consequently, the recusal claim and the affiliated ineffective assistance claims were defaulted at trial, on direct appeal, and in the first § 2255 proceeding. Heddings has not alleged cause sufficient to excuse his default. In particular, he does not allege any facts suggesting that habeas counsel's performance was unreasonable. *See Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309, 1320 (2012); *see also, e.g., United States v. Radmall*, 340 F.3d 798, 802 (9th Cir. 2003) (noting that litigants are not "entitled to hold issues back for a string of appeals"); *United States v. Wright*, 716 F.2d 549, 550 (9th Cir. 1983) (per curiam). It would be difficult for

---

[1] On October 9, 2012, Heddings' counsel filed a third amended § 2255 motion (Doc. 154), which also omitted the recusal and affiliated ineffective assistance claims.

9

him to make that showing, as he agreed to abandon the claims. These claims are dismissed with prejudice as procedurally defaulted.

## B. *Brady* Claim

Heddings claims investigating officers destroyed evidence to make his incriminating statements appear to be voluntary. *See* Mot. § 2255 at 10; Mem. at 4-5.

Before Heddings pled guilty, he filed a motion to suppress based on events occurring on the night of his arrest and the next day. A hearing was held on April 23, 2007. Everyone agreed that on the night of the arrest, Heddings was advised of and invoked his *Miranda* rights, so no interview took place. But, the next day, Heddings changed his mind and made a statement.

At the hearing, the question was whether one Officer Jones rendered the next day's statement involuntary by telling Heddings he probably would not qualify financially for court-appointed counsel and by referring to an imminent trip to Missouri—a reference that Heddings claimed he interpreted to mean that he would be immediately extradited to Missouri unless he submitted to an interview. Heddings and Jones testified, as did other officers who were present at least part of the time. Heddings also called his friend Steve Kenney, a lawyer with experience in both prosecution and defense who happened to be at Heddings' house when he was arrested and whom Heddings talked to by phone from the jail around the time

10

of his aborted interview. The presiding judge found Heddings was not credible when he testified that Detective Jones coerced him to consent to an interview. Because the presiding judge observed the witnesses and judged their credibility, and because Kenney did not confirm the key component of Heddings' testimony as Heddings claimed he would, the judge's findings were supported by adequate evidence. *See, e.g.*, Supp. Hr'g Tr. (Doc. 40) at 97:17-21, 101:1-104:18; *compare also id.* at 80:13-81:7, 89:10-12 (Heddings), *with id.* at 64:1-66:17 (Kenney).

Heddings now seems to allege that counsel, in litigating the suppression motion, should have added an allegation that officers deliberately destroyed the videotape of the aborted interview on the night of the arrest because it would have shown what Jones said to Heddings. *See* Mot. § 2255 at 10; Mem. at 4-5. If that is all Heddings means to allege, his claim is meritless. Everyone agreed at the April 2007 hearing that the DVD, set up to record the interview, was destroyed when the interview was not held. *See* Supp. Hr'g Tr. at 13:1-19 (Officer Antonich says he "threw it in the garbage."). Thus, nothing was hidden or unknown. Further, claiming the DVD was destroyed to eliminate the evidence Heddings claimed it contained would not make it more likely or less likely that the tape actually contained that evidence. Fed. R. Evid. 401.

To the extent Heddings instead means to allege that his statements should have been suppressed, the claim is defaulted. Heddings' guilty plea waived all

11

claims of pretrial constitutional violations. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

The default cannot be excused by a claim that appellate counsel was ineffective, because appellate counsel cannot appeal a waived claim. Nor can the default be excused by an allegation that trial counsel was ineffective in advising Heddings to plead guilty despite his claim that he was coerced to make a statement. There has been a review the entire transcript of the suppression hearing. Heddings' claim that his statement was involuntary is weak. Even a judge who found Heddings testified truthfully as to the facts was unlikely to find that the officers engaged in coercive activity or that Heddings was peculiarly susceptible to suasion. There is no reason to believe his decision to submit to an interview was anything other than voluntary. *See, e.g.*, *United States v. Preston*, 751 F.3d 1008, 1015-18 (9th Cir. 2014) (en banc); *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). There is no reason to suspect it might have been unreasonable for trial counsel to advise Heddings to plead guilty even though doing so would waive his suppression motion. *Henderson*, 411 U.S. at 268.

This claim is denied for lack of merit and is also procedurally defaulted.

## C. Voluntariness of Guilty Plea

Heddings claims his guilty plea was involuntary because he was not advised, during the trial court's plea colloquy, that his federal sentence might run

12

consecutive to any sentence that might eventually be imposed on the state charges pending against him. He relies on the rule of *United States v. Neely*, 38 F.3d 458 (9th Cir. 1994) (per curiam). *See* Mot. § 2255 (Doc. 196) at 4 ¶ 5A, 7; Mem. (Doc. 198) at 2, 3-4.

As this claim was based on an omission from the plea colloquy, Heddings should have raised it in his first direct appeal in 2007. He did not do so. The Court will not consider it unless he shows cause and prejudice to excuse his default. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *Bousley v. United States*, 523 U.S. 614, 621-22 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982)).

Heddings argues that appellate counsel was ineffective for failing to raise a *Neely* claim in the first direct appeal. He believes the claim would necessarily have been successful, and the case would have been remanded so that he could plead anew or so that the presiding judge could order that the federal sentence be executed concurrently with any later-imposed sentence. *See Neely*, 38 F.3d at 461.

Heddings is mistaken. First, *Neely* leaves the choice between the defendant's pleading anew or imposition of a concurrent sentence with the district court, not the defendant. Heddings cannot use *Neely* error as a tool to bind the federal court to impose a concurrent sentence. *See Neely*, 38 F.3d at 461.

Second, it would have made sense appellate counsel to make a *Neely* claim

13

on direct appeal, by asserting plain error, if Heddings' guilty plea was involuntary—that is, if he would not have pled guilty at all had he correctly understood his state sentences might be consecutive to his federal sentence. But Heddings not only does not say that in this § 2255 motion, he has *never* made that claim. *See* Mot. § 2255 (Doc. 113); Mem. (Doc. 114); Mot. to Am. or Supp. (Doc. 119); Second Am. § 2255 Mot. (Doc. 131). In his third amended § 2255 motion, Heddings raised a claim under *Neely*, but he said only that the case "supports Heddings' request that the Court vacate his sentence and . . . properly address the issues of Heddings receiving credit for time served and the propriety of his state and federal sentences running concurrently." Third Am. § 2255 Mot. (Doc. 154) at 46. Nor does Heddings say (nor has he ever said) he did not in fact know that his Montana or Missouri sentences might be consecutive to his federal sentence. A concurrent federal sentence is the only form of relief his present motion seeks and the only relief he has ever sought under *Neely*. *See, e.g.*, Mot. § 2255 (Doc. 196) at 7; Mem. (Doc. 198) at 3-4, 8 (describing relief requested); Third Am. § 2255 Mot. at 46.

Third, the Missouri courts imposed their sentences to run consecutive to the federal sentence. *See* 2014 Presentence Report ¶¶ 42-43. The federal court would not override the Missouri courts' decisions. It would also be unlikely the BOP could achieve that result in practice. *See Setser v. United States*, __ U.S. __, 132 S.

14

Ct. 1463, 1472-73 (2012)).

For these reasons, Heddings' allegations do not support an inference that counsel performed unreasonably by failing to raise a claim under *Neely* at trial or on appeal. He cannot show cause to excuse his failure to raise a *Neely* claim in his first direct appeal. The claim is dismissed with prejudice as procedurally defaulted.

### D. "Double Counting"

Heddings claims the imposition of an enhancement for obstruction of justice under U.S.S.G. § 3C1.1 amounted to "double counting" because he was also convicted, under Count 3, of destroying evidence. Mot. § 2255 at 5; Mem. at 4. He cites *United States v. Fries*, 781 F.3d 1137 (9th Cir. 2015). *Fries* supports application of the enhancement. Count 3 was grouped with Count 1, rather than being assigned a separate offense level. *See Fries*, 781 F.3d at 1153-54; U.S.S.G. § 3C1.1 Application Note 8. This claim is denied as meritless and is also procedurally defaulted.

### E. Criminal History Category

Heddings claims there are two reasons his three state convictions in Montana and Missouri should not have been counted against him at his re-sentencing in January 2014. Unlike the claims discussed above, these claims and Heddings' other claims regarding the sentencing guidelines can be decided on the merits

15

without any factual development. Mot. § 2255 at 4, 9; Mem. at 4.

First, Heddings claims the guidelines count sentences "imposed upon adjudication of guilt . . . for conduct *not* part of the instant offense." U.S.S.G. § 4A1.2(a) (emphasis added.) He asserts the state offenses were part of his federal offenses because he received a five-level enhancement under U.S.S.G. § 2G2.2(b)(5) for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor. *See* Presentence Report ¶ 21. But Application Note 3 to U.S.S.G. § 2G2.2(b)(5) specifically provides that "[a] conviction taken into account under subsection (b)(5) is not excluded from consideration of whether that conviction receives criminal history points pursuant to Chapter Four, Part A (Criminal History)." This claim is meritless.

Second, Heddings points to Application Note 2 to U.S.S.G. § 4A1.2, which provides that, "[t]o qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence." Since he will not actually serve any time on his Missouri sentences until he discharges his federal sentence, Heddings argues, those sentences should not be included in his criminal history points. The argument is unpersuasive. Immediately after the quoted language, Application Note 2 cites §§ 4A1.2(a)(3) and (b)(2). Those provisions refer to fully or partially suspended or stayed sentences, not consecutive prison terms whose execution has not yet begun. The courts that have heard Heddings'

16

argument have rejected it. *See, e.g.*, *United States v. Reid*, 827 F.3d 797, 802-03

(8th Cir. 2016) (citing *United States v. Duffy*, 29 F.3d 625, 625 (5th Cir. 1994));

*United States v. Rayborn*, 957 F.2d 841, 844 (11th Cir. 1992). This claim is

meritless.

Both of these claims are denied as meritless and are also procedurally

defaulted.

### F. Double Jeopardy in Consecutive Sentence

Heddings claims that making his federal sentence consecutive to his

Missouri sentences violated his constitutional protection against double jeopardy

and a sentencing guideline, U.S.S.G. § 5G1.3, as altered by Amendment 787. Mot.

§ 2255 at 11-12; Mem. at 5-6.

Whether Heddings' sentence complied with U.S.S.G. § 5G1.3 was addressed

in Heddings' third direct appeal. "Because Heddings's Missouri convictions for

sexual abuse and felony statutory sodomy were not the basis for an increase in the

offense level for the federal offense, the district court did not err in declining to

apply § 5G1.3(b) (2013) of the Guidelines to impose the sentence on the federal

offense to run concurrently with the Missouri sentences." Mem. (Doc. 191) at 2,

*United States v. Heddings*, No. 14-30002 (9th Cir. Mar. 17, 2015). That is the law

of the case. "Issues disposed of on a previous direct appeal are not reviewable in a

subsequent § 2255 proceeding." *United States v. Currie*, 589 F.2d 993, 995 (9th

Cir. 1979) (citing cases); *see also United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985); *United States v. Scrivner*, 189 F.3d 825, 828 n.1 (9th Cir. 1999) (noting that "relitigation bar" precludes reconsideration in a § 2255 proceeding of claims raised and adjudicated on direct appeal).

Heddings argues that the constitutional nature of his claim and a recent amendment to U.S.S.G. § 5G1.3 are good reasons to depart from the law of the case. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997); *see also* Mot. § 2255 at 12; Mem. at 5-6. These arguments are not persuasive.

First, the constitutional nature of a claim cannot justify departing from the law of the case, or the doctrine would virtually never apply to a § 2255 motion. At any rate, there is no double jeopardy argument to be made. The United States, the State of Montana, and the State of Missouri are all separate sovereigns. *See, e.g.*, *Heath v. Alabama*, 474 U.S. 82, 88 (1985). Even if Heddings committed one discrete act, the Constitution would not preclude each sovereign from convicting him and imposing a consecutive sentence. Heddings insists he is being punished for what is essentially "all the same conduct." Sexually assaulting a child is not the same conduct as receiving child pornography or obstructing justice, but even if it were, the concept of double jeopardy provides no safe harbor for conduct that offends the criminal laws of several sovereigns.

Second, Amendment 787 to the sentencing guidelines had nothing to do with

18

double jeopardy concerns and did not change the meaning of the guideline in any way pertinent here.[2] Both before and after the amendment, a federal sentence is appropriately made concurrent to a state sentence when the conduct underlying the state sentence is actually relied on as relevant conduct in the defendant's federal guideline calculation, not whenever it could have been but was not relied on. And Heddings' Missouri convictions were not relied on as relevant conduct in his guideline calculations. Only his Montana conviction was. *See* Sentencing Tr. (Doc. 67) at 10:14-12:14; Re-Sentencing Tr. (Doc. 188) at 13:3-14; Mem. (Doc. 191) at 2, *Heddings*, No. 14-30002.

This claim is denied for lack of merit and dismissed with prejudice under the law of the case doctrine.

## G. Starting Point for Guideline Departures

Finally, Heddings claims that the sentencing court's downward departure under U.S.S.G. § 5K2.16 and the three-level acceptance of responsibility reduction under § 3E1.1 should have started at 240 months, the statutory maximum sentence, rather than the guideline range of 292 to 365 months. *See* Mot. to Am. (Doc. 202)

---

[2] The amendment more clearly defined the scope of § 5G1.3(b), which authorizes a concurrent federal sentence where conduct underlying another sentence is also taken into account in the federal guideline calculation. So, for instance, a defendant's base offense level under § 2K2.1 is higher if he has a prior conviction for a crime of violence. If that prior conviction was based on *conduct* that also resulted in an increase in the offense level, a concurrent sentence is indicated. But if the prior *conviction* increases the offense level, a concurrent sentence is not indicated. *See, e.g.*, U.S.S.G. § 5G1.3 Application Note 2(B), (D).

at 2-3. In other words, Heddings argues that he should receive all available reductions under the guidelines but, once the guideline range surpasses 240 months, no further available enhancements.

The argument is not persuasive. Quoting *United States v. Evans-Martinez*, 611 F.3d 635 (9th Cir. 2010), Heddings says, "Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence." On its face, this statement does not mean what Heddings says it means. In addition, although Heddings does not say so, *Evans-Martinez* is quoting U.S.S.G. § 5G1.1(a). The guideline distinguishes between "the applicable guideline range" and "the guideline sentence." Part K of Chapter 5 authorizes certain departures "from the applicable guideline range," not from "the guideline sentence." *See also* U.S.S.G. § 1B1.1 (directing order of application of guideline provisions).

Like his other guideline claims, Heddings can neither show it was unreasonable for counsel to fail to raise this claim nor that he is entitled to relief on it. It is denied for lack of merit and is procedurally defaulted as well.

## IV. Motion for Counsel

Heddings moves for the appointment of new counsel to represent him. A district court has discretion to appoint counsel if "the interests of justice so require," 18 U.S.C. § 3006A(a)(2)(B), considering the likelihood of success on the

20

merits, the complexity of the legal issues involved, and the movant's ability to articulate his claims pro se. *See Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) (per curiam). All of Heddings' claims are meritless, procedurally defaulted without excuse, or both. It is not in the interests of justice to appoint counsel.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

None of Heddings' claims meets the required threshold. In proceedings on his first motion under 28 U.S.C. § 2255, when he was represented by new counsel, Heddings personally chose to abandon his claim that Judge Haddon should have recused himself, and he alleges no facts tending to show that habeas counsel's decision not to pursue it was unreasonable. Although Heddings alleges that his guilty plea was involuntary because the trial court failed to comply with *United*

21

*States v. Neely*, 38 F.3d 458 (9th Cir. 1994) (per curiam), Heddings does not want to plead anew but only to dictate that his federal sentence must run concurrent with his Missouri sentences. The *Brady* claim is an attempt to reopen his motion to suppress his statements, which was denied and waived by his guilty plea. Moreover, he does not identify any fact that was not known to the trial court at the time of the suppression hearing.

Finally, Heddings incorrectly interprets the guidelines in his claims that his criminal history was incorrectly assessed, that his obstruction of justice was counted against him twice, and that guideline departures should be taken from the statutory maximum sentence rather than the applicable guideline range, which was higher in Heddings' case than the statutory maximum.

None of Heddings' claims makes a substantial showing that he was deprived of a constitutional right. In addition, reasonable jurists would find no room to disagree that several of his claims are procedurally barred and no reason to encourage further proceedings. A certificate of appealability is denied on all issues.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Heddings' motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 196, 198, 199, 201, 202) is DENIED;

2. Heddings' motion for the appointment of counsel (Doc. 203) is DENIED.

3. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Heddings files a Notice of Appeal;

4. The Clerk of Court shall ensure that all pending motions in this case and in CV 16-14-GF-DWM are terminated and shall close the civil file by entering judgment in favor of the United States and against Heddings.

DATED this **22ⁿᵈ** day of November, 2016.

Donald W. Molloy, District Judge
United States District Court